**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

JOEL TREJO, Individually and as Administrator      PLAINTIFFS
of the ESTATE OF SILVESTRA TREJO, and as
Next Friend of ROSA TREJO; ALONDRA TREJO;
DANIA TREJO; and MARIO TREJO

v.        No. 3:10CV00285 JLH

UNION PACIFIC RAILROAD COMPANY;
ROBERT COLLINS; and JOHN DOES 1-5      DEFENDANTS

**OPINION AND ORDER**

This case arises from a railroad crossing accident in which Silvestra Trejo was killed and Rosa Trejo, Dania Trejo, and Alondra Trejo were injured in a collision between their automobile and a Union Pacific Railroad Company train. The Trejos brought this action against Union Pacific and Robert Collins, the conductor of the train, in the Circuit Court of Craighead County, Arkansas. The defendants removed the action to this Court on the ground that federal question jurisdiction exists, arguing that the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") completely preempts any state tort action. Alternatively, the defendants allege that the Trejos fraudulently joined Collins, an Arkansas resident, to destroy diversity. The Trejos have filed a motion to remand the case, arguing that removal was improper and that the Court lacks subject matter jurisdiction. The defendants have responded. For the following reasons, the motion to remand is granted.

**I.**

The Court will first consider whether removal was proper based on diversity jurisdiction under Section 1332 of Title 28 of the United States Code. The statute provides that the legal representative of an estate is deemed to be a citizen of the same state as the decedent, and, likewise,

the legal representative of an infant or an incompetent is deemed to be a citizen of the same state as the infant or the incompetent. 28 U.S.C. § 1332(c)(2). According to the complaint, Joel Trejo and Rosa Trejo are residents of Texas, while Dania Trejo, Alondra Trejo, and Mario Trejo are residents of Arkansas. While residency is not the same as citizenship, the parties have briefed the issues on the assumption that Dania, Alondra, and Mario are citizens of the State of Arkansas, so the Court will accept that assumption. The complaint does not say of what state Silvestra Trejo was a citizen, but attached to the complaint is a letter of administration from the Court of Ellis County, Texas, appointing Joel Trejo as administrator of Silvestra Trejo's estate. In the absence of any other indication of Silvestra's citizenship, the Court will assume that Silvestra Trejo was a citizen of the State of Texas.[1] Union Pacific is a Delaware corporation with its principal place of business in Nebraska. Robert Collins is a citizen of Arkansas. The defendants contend that Collins was fraudulently joined as a defendant for the purpose of destroying diversity. Because Union Pacific is a Delaware corporation with its principal place of business in Nebraska, and because no plaintiff is a citizen of Delaware or Nebraska, the defendants argue that there is complete diversity of citizenship.

The party seeking to invoke the court's jurisdiction bears the burden of establishing jurisdiction by a preponderance of evidence. *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). "Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a nondiverse defendant solely to prevent removal. When determining if a party has been fraudulently joined, a court considers whether there is any reasonable basis in fact or law to support a claim against a

---

[1] Silvestra's citizenship would alter the outcome only if she had been a citizen of Nebraska or Delaware, and there is no suggestion that she was.

nondiverse defendant." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010) (citations omitted).   A court may look beyond the pleadings and consider the entire record in determining whether it has subject matter jurisdiction. *Osborn v. United States*, 918 F.2d 724, 728-30 (8th Cir. 1990).

Here, the plaintiffs allege that Collins was negligent as train conductor and list a number of duties that he allegedly violated, including the duty to keep a lookout, the duty to warn of the approach of the train, and the duty to apply the brakes to the train.   The defendants contend that the plaintiffs cannot establish a prima facie claim of negligence because, they say, as the conductor Collins had no duty to keep a lookout, to sound a warning, or apply the brakes, because those are duties of the engineer, not the conductor.[2]   The parties disagree as to whether Collins, as a train conductor, had a duty to keep a proper lookout on the tracks, a duty to slow the train, and a duty to sound a horn.

The defendants have submitted an affidavit by Collins stating that, as the conductor, he did not have a duty to keep a lookout at the time of the crash, did not have a duty to slow the train, and did not have a duty to sound a horn.   In response, the Trejos have submitted deposition testimony by employees of Union Pacific in similar cases contradicting Collins's affidavit and stating that the conductor on a Union Pacific train is the "eyes and ears" for the engineer.   The deposition testimony states that the conductor can sound the horn and apply the brakes in an emergency.

---

[2] *See Lovett ex rel. Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000) ("To establish a prima facie case of negligence, the plaintiff must prove that: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach was the proximate cause of the plaintiff's injuries.").

The Arkansas statute places a duty to keep a lookout on crew members.  Section 23-12-907 of the Arkansas Code Annotated imposes a duty on "all persons running trains in this state upon any railroad to keep a constant lookout for all persons, including licensees and trespassers, and property upon the track of any and all railroads."[3]  The Arkansas model jury instructions pertaining to § 23-12-907 state that this statute "does not mean that each member of the train crew must keep a constant lookout, but it does mean that an efficient lookout must be kept by some member of the crew at all times."  Ark. Model Jury Instructions (Civil) § 1802 (2011 ed.).  The Trejos have also presented evidence that Union Pacific train conductors are the "eyes and ears" of the engineer, have a better view than the engineer, and have access to the horn and brakes.  Accordingly, there is a reasonable basis for the claims of the Trejos against Collins: he was not fraudulently joined.

Collins is a citizen of the State of Arkansas.  Three of the plaintiffs apparently are citizens of the State of Arkansas.  Consequently, Union Pacific has failed to show that there is a complete diversity of citizenship between the plaintiffs and the defendants.

---

[3] Union Pacific points out that the Eighth Circuit has held that "[a] train crew does not owe a duty to keep a lookout and take precautions to avoid injury until it becomes apparent that the traveler or pedestrian approaching a railroad track will not stop before placing himself in peril."  *Lovett ex rel. Lovett*, 201 F.3d at 1083-84.  The Eighth Circuit cited *Northland Ins. Co. v. Union Pac. R.R. Co.*, 309 Ark. 287, 830 S.W.2d 850 (1992), which holds that the duty to take precautions begins only when it becomes apparent that the traveler or pedestrian will not stop before reaching the crossing or will not move from the tracks, not that the duty to keep a lookout begins only then.  *Id.* at 292, 830 S.W.2d at 853.  It would be absurd to hold that the crew's duty to be vigilant only arises when the crash is imminent because, without keeping a lookout, the peril would never become apparent, and the Eighth Circuit did not intend to suggest that such an absurdity is the law of Arkansas.  Indeed, the Eighth Circuit cited Ark. Code Ann. § 23-12-907, which provides that railroads have a duty to keep "a constant lookout." *Lovett*, 201 F.3d at 1083.

## II.

Because diversity jurisdiction is not present, the Court may only retain the case if there is federal question jurisdiction under 28 U.S.C. § 1331. As the Eighth Circuit has explained:

> Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.

*Magee v. Exxon Corp.*, 135 F.3d 599, 601 (8th Cir. 1998) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987). The defendants contend that federal question jurisdiction exists because the ICCTA, which grants exclusive jurisdiction to the Surface Transportation Board over a variety of matters affecting railroads, preempts some or all of the common law negligence claim asserted by the Trejos against Union Pacific. Specifically, the complaint alleges that the construction and design of the crossing was unsafe, and Union Pacific argues that such a claim is completely preempted by the ICCTA, citing *Rawls v. Union Pacific R.R. Co.*, No. 09-CV-1037, 2010 WL 892115 (W.D. Ark. March 9, 2010); *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2009 WL 224072 (E.D. La. Jan. 26, 2009); and *Elam v. Kansas City Southern Ry.*, No. 1:08CV304-D-D, 2009 WL 774404 (N.D. Miss. March 24, 2009). However, "[f]ederal-question jurisdiction is not created by a federal defense, including the defense of preemption, even if the defense is the only contested issue in the case." *Magee*, 135 F.3d at 601. *See also Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 14, 103 S. Ct. 2841, 2848-49, 77 L. Ed. 2d 420 (1983); *Bates v. Mo. & N. Ark. R.R. Co., Inc.*, 548 F.3d 634, 636 (8th Cir. 2008). Therefore, that the ICCTA may preempt some of the negligence claims asserted by the Trejos does not create federal question jurisdiction.

5

The Supreme Court and the Eighth Circuit have recognized a narrow[4] basis for jurisdiction in preemption case known as the complete preemption doctrine. *Williams*, 482 U.S. at 393, 107 S. Ct. at 2430; *Magee*, 135 F.3d at 601. "The complete preemption doctrine recognizes that federal law may so wholly displace a state law cause of action that a state law claim is converted into a federal claim from its inception." *Bates*, 548 F.3d at 636. "The complete preemption doctrine applies only when a federal statute possesses extraordinary pre-emptive power, a conclusion courts reach reluctantly." *Magee*, 135 F.3d at 601 (internal citations and quotations omitted).

"Complete preemption is a shorthand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be *recharacterized* as a federal claim." *Fayard v. Northeast Vehicle Servs., LLC*, 533 F.3d 42, 45 (1st Cir. 2008) (emphasis in original). Courts have held that Congress did not intend to preempt a state law claim completely where Congress failed to provide a superseding federal cause of action. *See*, *e.g.*, *Id.* at 46 ("The Supreme Court decisions finding complete preemption share a common denominator: exclusive federal regulation of the subject matter of the asserted state claim . . . coupled with a federal cause of action for wrongs of the same type . . . . Exclusive federal regulation alone might preempt state claims; but it is the further presence of a counterpart federal cause of action that allows the state claim to be transformed into a federal one.") (internal citations omitted); *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 323 (6th Cir. 2005) ("In those cases where the Supreme Court has found complete preemption, the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that

---

[4] *Bates*, 548 F.3d at 636 (describing the complete preemption doctrine as a "narrow exception[.]") (citing *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 5, 123 S. Ct. 2058, 2061, 156 L. Ed. 2d 1 (2003).

cause of action.") (internal quotation omitted); 16 James WM. Moore, *Moore's Federal Practice* § 107.14[4][b][iv] ("A case cannot be removed to federal court on the basis of complete preemption unless there is a cause of action the plaintiff could theoretically bring in federal district court.").

While a superseding federal cause of action is usually required, it is not always necessary to establish complete preemption. "The issue of whether complete preemption exists is separate from the issue of whether a private remedy is created under a federal statute." *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 547 (8th Cir. 1996) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. at 391 n.4, 107 S. Ct. at 2428-29 n.4). "Although courts may be reluctant to conclude that Congress intended plaintiffs to be left without recourse, the intent of Congress is what controls." *Gaming Corp. of Am.*, 88 F.3d at 547 (internal citations omitted); *Magee*, 135 F.3d at 601-02 ("Congressional intent is the touchstone of the complete preemption analysis. We must determine whether Congress has clearly manifested an intent to make a cause of action pleaded under state law removable to federal court. . .") (internal citation removed).

The ICCTA does not create a federal remedy for tort actions. *See Watkins v. RJ Corman R.R.*, No. 7:09114, 2010 WL 1710203, *3-4 (E.D. Ky. April 27, 2010) (the ICCTA does not provide a federal cause of action that supersedes state-law nuisance and negligence causes of action); *Allied Indus. Dev. Corp. v. Ohio Cent. R.R., Inc.*, No. 4:09CV01904, 2010 WL 987156, *3 (N.D. Ohio March 15, 2010) (finding that a claim for trespass does not fall within the scope of the ICCTA). Therefore, concluding that the ICCTA completely preempts the Trejos' negligence claims would require concluding that Congress intended to leave persons injured due to negligent design and construction of railroad crossings without any remedy. The Court is reluctant to come to such a conclusion. The lack of an express superseding federal claim militates against concluding that

Congress intended the ICCTA to completely preempt state tort claims. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 487, 116 S. Ct. 2240, 2251, 135 L. Ed. 2d 700 (1996) ("It is, to say the least, difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct, and it would take language much plainer . . . to convince us that Congress intended that result.") (internal quotation and citation omitted); *M. Nahas & Co., Inc. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 612 (8th Cir. 1991) (complete preemption "is most appropriate where Congress has created an exclusive federal remedy that displaces any overlapping or inconsistent state remedies.").

Apart from the fact that the Trejos would be left without any recourse, circuit courts have held that " 'Congress narrowly tailored the ICCTA pre-emption provision to displace only 'regulation,' i.e., those state laws that may reasonably be said to have the effect of 'manag[ing]' or 'govern[ing]' rail transportation, . . . while permitting the continued application of laws having a more remote or incidental effect on rail transportation.' " *Franks Inv. Co. LLC v. Union Pac R.R. Co.*, 593 F.3d 404, 408-13 (5th Cir. 2010) (citing *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001)). *See also PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 218 (4th Cir. 2009); *Adrian & Blissfield R.R. Co. v. Vill. of Blissfield*, 550 F.3d 533, 539 (6th Cir. 2008). A state tort action does not "manage" or "govern" railroad transportation but rather, at most, has some "incidental effect" on railroad transportation. *Cf. Allied Indus. Dev. Corp.*, 2010 WL 1524469, *1 n.1 ("If the contrary were true, as the defendants argue, then the scope of ICCTA preemption would be staggering, sweeping away state contract, tort, and property law. Indeed, it is difficult to imagine a state law that could not, in some circumstance, incidentally" affect railroad transportation.).

Further, Congress intended that the ICCTA regulate economic matters, not safety.  *Watkins*, 2010 WL 1710203, *3 ("The express preemption provision of § 10501(b) . . . was meant 'to reflect the direct and complete pre-emption of State economic regulation of railroads . . . .'  H.R. Rep. 104-311 at 95 (1995), 1995 U.S.C.C.A.N. 793, 807.").  The Federal Railroad Safety Act ("FRSA") seems the more appropriate basis for federal preemption of personal injury claims involving trains.  49 U.S.C. § 20101 *et seq*.  Even the FRSA, however, does not completely preempt state tort actions.  *Bates*, 548 F.3d at 637.  It would be a strange result indeed to conclude that the ICCTA, which is concerned with economic regulation rather than railroad safety, completely preempts a state tort action for personal injury when the FRSA, which is concerned with railroad safety, does not.

Although the defendants have cited cases holding that the ICCTA completely preempts some negligence claims against railroads, those cases are either distinguishable or are unpersuasive.  In part, those cases fail to recognize the distinction between preemption as a defense on the merits and complete preemption, which is a narrow doctrine resulting in a state-law claim being recharacterized as a federal-law claim and therefore creating federal question jurisdiction.

Preemption under the ICCTA may be a defense to the Trejos' negligence action, but whether that is so is an issue for the Circuit Court of Craighead County to decide.  This Court lacks federal question jurisdiction over this case.  Pursuant to Section 1447(c) of Title 28 of the United States Code, this action will be remanded.

## CONCLUSION

Accordingly, the plaintiffs' motion to remand is GRANTED.  Document #10.  The Court orders that this action be remanded to the Circuit Court of Craighead County, Arkansas.

IT IS SO ORDERED this 28th day of January, 2011.

_____

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE